## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| The Ark Initiative, Donald Duerr, | ) | |
| Scott Schlesinger, Rocky Mountain Wild, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civ. No. 1:14-cv-00633 (JEB) |
| | ) | |
| U.S. Forest Service Chief Thomas Tidwell, | ) | |
| White River National Forest Supervisor | ) | |
| | ) | |
| Scott Fitzwilliams, Deputy Regional | ) | |
| Forester Maribeth Gustafson, U.S. Forest | ) | |
| Service Rocky Mountain Region, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## PLAINTIFFS' RESPONSE TO ASC'S MOTION TO STRIKE
## PLAINTIFFS' AMENDED COMPLAINT

Defendant-Intervenor Aspen Skiing Company's ("ASC") motion to strike Plaintiffs'

Amended Complaint, *see* D.E. 22 – which made no substantive changes at all but, rather, added

a single organizational Plaintiff to the preexisting claims – is little more than a diversionary

tactic for avoiding a ruling concerning the validity of the Colorado Roadless Rule ("CRR") – a

rule that cannot withstand judicial scrutiny, as explained in Plaintiffs' pending motion for

summary judgment.  *See* D.E. 20.  In light of Supreme Court and Circuit precedent, however,

there is no basis whatsoever for striking Plaintiffs' Amended Complaint under Rule 15.

Accordingly, for the myriad reasons explained below, ASC's motion cannot be

sustained under the command of Rule 15(a)(1), which makes plain that Plaintiffs had an

unqualified right to amend their Complaint when they did.  Further, even if the Court were

called on to exercise any discretion with respect to allowing the Amended Complaint – which it

is not – rejecting the Amended Complaint under Rule 15(a)(2) would be an abuse of discretion

because there is no cognizable prejudice to ASC warranting the extraordinary relief of prohibiting an aggrieved party – Rocky Mountain Wild ("RMW"), a Colorado non-profit organization with longstanding, documented interests in the CRR – from joining a lawsuit in which the outcome may significantly affect its organizational mission and interests.  Indeed, because ASC *concedes* that RMW could immediately file its own lawsuit challenging the same CRR ski area exclusion challenged by the other Plaintiffs in this case, *see* D.E. 22 at 13 (admitting that RMW "may separately file a suit for judicial relief" as to the "ski area policy decision made in the [CRR]") – which undoubtedly would be filed as a related case to this matter and consolidated with this case on the merits – the Court and the parties would inevitably end up in *exactly the same place as they are now* should ASC's ill-advised motion be granted.  Consequently, the Court's own interests in judicial economy and efficiency also counsel strongly in favor of denying ASC's motion.

## FACTUAL BACKGROUND

Plaintiffs filed the Original Complaint in this matter on April 16, 2014.  *See* D.E. 1.  The Original Complaint made clear that the Plaintiffs were challenging two separate – albeit interrelated – U.S. Forest Service ("Service" or "USFS") decisions.  Hence, as Plaintiffs' Original Complaint made crystal clear, Plaintiffs from the genesis of this lawsuit have challenged *both*: (1) the Service's July 2012 CRR exclusion of 8,260 acres within ski area boundaries from the roadless inventory as inconsistent with the Wilderness Act and as arbitrary and capricious by departing without explanation from four decades of roadless management policy and practice, *see* D.E. 20 at 26-44, *and* (2) the Service's September 2013 egress decision – which is not only a site-specific decision applying the CRR by allowing activities in a parcel that was illegally removed from the roadless inventory by the CRR ski area exclusion, but is

also unlawful on grounds that are entirely *independent* from the grounds underlying Plaintiffs'
CRR ski area exclusion challenge.  *See id.* at 45-50; c*ompare* D.E. 1 ¶¶ 71-74 (challenging the
Service's **July 3, 2012 CRR ski area exclusion** of 8,260 acres from the roadless inventory on
Wilderness Act and Administrative Procedure Act ("APA") grounds), *with* D.E. 1 ¶¶ 61-70
(challenging the Service's **September 27, 2013 egress trail decision** on National Environmental
Policy Act and APA grounds).  Plaintiffs sought distinct relief as to each separate decision
challenged.  *Compare* D.E. 1, Prayer for Relief ¶ 3 (requesting "[s]etting aside Defendants'
**CRR ski area special use permit exclusion with respect to the 80-acre parcel and the 8,180**
**acres of similarly situated parcels**, and remanding that portion of the CRR to the agency for
further consideration"), *with* D.E. 1, Prayer for Relief ¶ 2 (requesting "[s]etting aside
Defendants' **egress trail decision**, and remanding the decision for further consideration by the
agency").

On April 28, 2014, in order to accommodate ASC's purported need to commence
"ground disturbing activities" by "the week of August 18, 2014" should Defendants prevail,
Plaintiffs agreed to an expedited schedule for resolution of the merits.  D.E. 11 at 2; *see also id.*
(explaining that the expedited schedule "accommodates Aspen Skiing Company's interest in
carrying out the work authorized by the decision before the next ski season should the decision
not be set aside by the Court").  Nowhere in that Joint Stipulation did the parties remotely
suggest – much less state – that the stipulation barred Plaintiffs in any manner from amending
their complaint pursuant to Rule 15, nor did the stipulation in any way supersede or make
inapplicable the Federal Rules of Civil Procedure that govern all federal court litigation unless
expressly provided otherwise.  The Court approved the stipulation by minute order on April 28,

2014, and, in doing so, did not in any way foreclose Plaintiffs from exercising their rights under the federal rules.

On May 20, 2014, the Service lodged with the Court its approximately 170,000-page administrative record – 97% of which consisted of documents concerning the CRR decision and only 3% of which consisted of documents concerning the egress trail decision. Consequently, contrary to ASC's baseless contention that a challenge to the CRR became part of the case only when RMW was added to the Complaint, the federal government obviously recognized from the outset that the case encompassed not only the September 2013 egress trail decision, but also the July 2012 CRR ski area exclusion of 8,260 acres throughout Colorado.

Rocky Mountain Wild is Colorado-based non-profit conservation organization with demonstrable interests in the CRR and hence in the resolution of this case. *See* D.E. 16 ¶¶ 9-10. Indeed, in comments strenuously opposing the ski area exclusion in the CRR, RMW raised legal concerns that parallel those raised in Plaintiffs' claims. *Id*. ¶ 10 ("RMW submitted at least six distinct sets of extensive comments during the CRR rulemaking process, all of which urged the Service not to adopt the ski area exclusion because such an exclusion is legally impermissible and will harm the interests of RMW and its members."). Consequently, far from "hijacking" the litigation over that rule, *see* D.E. 22 at 3, 12, Rocky Mountain Wild's addition to it – *before* summary judgment briefing commenced – appropriately consolidated in one forum parties that object to and are aggrieved by the Forest Service's unprecedented categorical exclusion from the roadless inventory of areas that are objectively in a roadless and wilderness-like condition.

Further, in accomplishing the amendment, Plaintiffs went to great pains to proceed in strict compliance with the Federal Rules and, although they were not obligated to do so, to

provide the other parties with advance notice.  Thus, before Plaintiffs' expedited opening

summary judgment brief was filed with the Court – and thus before Defendants had engaged in

*any* substantive merits work on this case, including *any* preparation of their merits papers in

response to Plaintiffs' opening brief – Plaintiffs provided Defendants with advance notice that

they were amending their complaint as a matter of course pursuant to Rule 15(a)(1), despite the

fact that the rule provides an unequivocal right to amend a complaint where, as here, Plaintiffs

had not yet served the Original Complaint on Defendants and Defendants had not filed any

Answer or other pleading responsive to the Original Complaint.  *See* D.E. 22-1.  As Plaintiffs

explained in their notice to Defendants concerning the amendment, "the amended complaint

*will not add any new legal claims or expand the scope of the administrative record; rather, it*

*merely adds an additional organizational plaintiff (Rocky Mountain Wild).*"  *Id.* (emphasis

added).  That is precisely what Plaintiffs' Amended Complaint did – it added RMW while

maintaining all existing claims from the Original Complaint – as demonstrated by the red-lined

comparison of the Original and Amended Complaints.  *See* Exhibit A (Red-lined Complaint

Comparison).

Despite the fact that Rule 15 contemplates – indeed explicitly authorizes – complaint

amendment under these facts without any exercise of judicial discretion, ASC has moved to

strike Plaintiffs' Amended Complaint by grossly distorting the facts of this proceeding in an

attempt to avoid the Rule 15(a)(1) framework, and by turning a blind eye to governing legal

precedent that forecloses, as a matter of law, the very arguments made in ASC's motion to

strike.[1]

---

[1]  The government filed a cursory, half-page response to ASC's motion to strike.  *See* D.E. 23.
However, the government's motion merely parrots a few of ASC's arguments without any legal
or other support.  Accordingly, Plaintiffs focus on ASC's pending motion.

## LEGAL STANDARD

Under Rule 15(a)(1), unless otherwise explicitly restricted or prohibited by Court order in a particular case, plaintiffs are unequivocally entitled to amend their complaint as a matter of course "within 21 days after serving [the original complaint], or [within] 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f)."  Fed. R. Civ. Pro. 15(a)(1).  Because this right is afforded by rule without limitation, a court is not called on in such situations to exercise *any* discretion of whether to allow such amendment.

If neither of those situations exists – i.e., more than 21 days has passed after the service of a responsive pleading or a motion to dismiss – Rule 15(a)(2) provides that "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave," but then provides that "[t]he court should *freely give leave when justice so requires*."  Fed. R. Civ. Pro. 15(a)(2) (emphasis added).  As this Court recently explained, under Rule 15(a)(2), "the non-movant generally carries the burden in persuading the court to deny leave to amend," *Paxton v. Hosp. Ctr. Corp.* --- F. Supp. 2d ----, 2014 WL 2206340, at *1 (D.D.C 2014 (Boasberg, J.) (quotation marks and citation omitted), "and in this Circuit 'it is an abuse of discretion to deny leave to amend unless there is sufficient reason.'"  *Id.* (quoting *Firestone v. Firestone,* 76 F.3d 1205, 1208 (D.C. Cir. 1996)).  The rare circumstances in which a motion for leave may be denied under Rule 15(a)(2) are where "the motion is 'undu[ly] delay[ed],' if there is evidence of 'bad faith or dilatory motive on the part of the movant,' if she has 'repeated[ly] fail[ed] to cure deficiencies by amendments previously allowed,'. . . if the amendment would cause 'undue prejudice to the opposing party,'" or "if amendment would be futile."  *Id.* (quoting *Foman v. Davis,* 371 U.S. 178, 182 (1962)).

**I.     BECAUSE PLAINTIFFS ARE ENTITLED TO AMEND THEIR COMPLAINT
AS A MATTER OF RIGHT PURSUANT TO RULE 15(a)(1), ASC'S
OBJECTIONS ARE LEGALLY IRRELEVANT AND MUST BE DENIED.**

ASC asserts that "Plaintiffs erroneously filed [their Amended Complaint] without

seeking leave of this Court or defendants' consent as required by Fed. R. Civ. P. 15(a)(2)."

D.E. 22 at 1.  However, ASC has clearly misread Rule 15 and the cases interpreting it, and has

cited *no* cases supporting its novel position that complaint amendment here falls outside of the

clear dictates of Rule 15(a)(1).  Because there is no dispute that the Original Complaint has

*never* been served on Defendants and Defendants have never filed any responsive pleading or

motion to dismiss in response to the Original Complaint, it is Rule 15(a)(1), rather than

15(a)(2), that governs here.

It is beyond peradventure that Plaintiffs were entitled to amend as a matter of course,

pursuant to Rule 15(a)(1).  Starting with the text of the applicable rule, Rule 15 states:

(a) Amendments Before Trial.

> (1) *Amending as a Matter of Course.*  **A party may amend its pleading
> once as a matter of course within:**

>> **(A) 21 days after serving it, or**

>> **(B)  if the pleading is one to which a responsive pleading is required,
>> 21 days after service of a responsive pleading or 21 days after
>> service of a motion under Rule 12(b), (e), or (f), whichever is
>> earlier**.

> (2) *Other Amendments.* In all other cases, a party may amend its pleading only
> with the opposing party's written consent or the court's leave. The court should
> freely give leave when justice so requires.

Fed. R. Civ. Pro. 15(a)(1)-(2) (bold emphasis added).  Therefore, under a plain reading of Rule

15(a)(1)'s express terms, because the 21-day window running from service of the Original

Complaint has *not* expired in this case – nor, for that matter, has the alternative 21-day window

running from service of any responsive pleading or motion to dismiss expired – Plaintiffs were

entitled, as a matter of right, to amend their complaint on June 5, 2014 without notifying

Defendants or seeking leave of the Court.  ASC's motion must be denied on that basis alone.

Moreover, ASC's counter-textual reading of Rule 15 is in conflict with every court to

review analogous situations – i.e., complaint amendment where, for whatever reason, service of

the original complaint has not yet occurred – in the time since the current version of Rule 15

was adopted in December 2009.  As courts have uniformly held, a motion for leave is *not*

required where service of the original complaint has not yet occurred because amendment is

authorized as a matter of right.  *See, e.g.*, *McIntrye v. U.S.*, No. 3:13-cv-2404, 2014 WL

1653146, at *3 (M.D. Apr. 23, 2014) ("Since Plaintiff filed his Motion for Leave to File a

Second Amended Complaint before Defendants were served with his original or Amended

Complaint, we find that Plaintiff was not required to file a Motion for Leave to File a Second

Amended Complaint. . . . Specifically, Plaintiff was not required to file a Motion for Leave to

File a Second Amended Complaint, together with a proposed Second Amended Complaint and

support brief, because Defendants were not yet served with his original or Amended

Complaint.") (citing Rule 15(a)(1)); *Park v. TD Ameritrade Trust Co., Inc.*, No. 10-cv-188,

2010 WL 1410563, at *1 (D. Colo. Apr. 1, 2010) ("Here, the plaintiff has not yet served her

Complaint on the defendants.  Therefore, she may amend her Complaint as a matter of

course."); *Little v. E. Dist. Police Station*, No. 13-cv-1514, 2014 WL 271628, at *3 (D. Md.

Jan. 22, 2014) (holding that "[b]ecause the Plaintiff has yet to properly serve the complaint, the

Plaintiff's motion to amend will be granted as of right under Rule 15(a)(1)"); *Brown v. SCDC*

*Kirland R and E*, No. 4:10-cv-1169, 2010 WL 3940981, at *1 (D.S.C. Oct. 5, 2010) ("Because

Plaintiff's complaint has not yet been served, Plaintiff may amend his pleading to name one or more proper defendants.") (citing Rule 15(a)(1)).[2]

Furthermore, the advisory committee notes to Rule 15(a)(1) make clear that the 2009 amendments to that provision were designed precisely to afford wide latitude to plaintiffs to amend their complaints as a matter of course for reasons including, *inter alia*, to respond to the discovery of facts or arguments counseling in favor of amendment, or to streamline the litigation for all parties and the Court. *See* Rule 15(a)(1), 2009 Advisory Committee Notes ("A responsive amendment may avoid the need to decide the motion or reduce the number of issues to be decided, and will expedite determination of issues that otherwise might be raised seriatim."); *id.* ("The responsive pleading may point out issues that the original pleader had not considered and persuade the pleader that amendment is wise.").

Because the rule, case law, and advisory committee notes do not support its position, ASC is instead forced to focus on the joint scheduling stipulation, asserting that the stipulation "does not authorize Plaintiffs to amend their Complaint at any time." D.E. 22 at 5.  However, conspicuously, the parties did *not* include *any* language in the stipulation restricting Plaintiffs' right under the Federal Rules to amend their complaint.  Had ASC wanted to strip Plaintiffs of a fundamental right to which they are expressly entitled by Rule 15 (or any other rule), ASC was required to make that an explicit condition of the stipulation rather than remaining silent only to

---

[2]  *See also Davis v. S.C. Dept. of Corrections*, No. 4:13-cv-1508, 2013 WL 5597181 (D.S.C. Oct. 11, 2013 (holding that "because Plaintiff's complaint has not yet been served on Defendants, Plaintiff may amend his complaint to add the individual parties," and that "[a]s no defendant has been served, the Court finds no prejudice."); *Fuller v. Bryant*, No. 3:12-cv-2755, 2013 WL 2635689, at *2 (D.S.C. June 11, 2013)  (allowing complaint amendment under Rule 15(a)(1) to add parties, and finding that "because Plaintiff's complaint has not yet been served on Defendants, Plaintiff may amend his complaint to add Andrzej E. Kalinski and James F. Arwood as defendants," and further that "[a]s no defendant has been served, the Court finds no prejudice").

prejudice Plaintiffs at a later time by belatedly asserting that Plaintiffs are now prohibited from exercising an unequivocal right afforded them by Rule 15.  In any case, there is no legal basis for ASC's request that the Court engraft onto the stipulation, *post hoc*, a condition that appears nowhere in the stipulation itself.  *See, e.g., Segar v. Mukasey*, 508 F.3d 16, 19 (D.C. Cir. 2007) ("We conclude that the district court erred in its interpretation of the stipulation agreed upon by the parties.  The document is not ambiguous, is not invalid, and means what the plaintiffs say it means."); *Doe v. Pataki*, 481 F.3d 69, 80 (2d Cir. 2007) ("[T]he stipulation is not ambiguous, and we cannot ignore the lack of ambiguity merely because its plain meaning does not correspond with the parties' alleged intentions."); *United States ex rel. Anti-Discrimination Center of Metro New York, Inc. v. Westchester County*, 712 F.3d 761, 769 (2d Cir. 2013) (ascertaining "plain meaning" of language in stipulation and order of settlement and dismissal); *Easter v. United States*, 83 Fed. Cl. 236, 241 (Ct. Fed. Cl. 2008) (interpreting language in stipulation of partial dismissal based on language's "plain meaning"); *Kersh v. Derozier*, 851 F.2d 1509, 1513 (5th Cir. 1988) ("The plain meaning of the words in the stipulation do not support [Appellants'] argument."); *Spence v. Centerplate*, 931 F. Supp. 2d 779, 782 (W.D. Kentucky 2013) ("A plain reading of the stipulation leaves Plaintiff no room to escape the bounds of its restrictions.").

Accordingly, ASC's resort to the stipulation fares no better than its other arguments. Because Plaintiffs were entitled as a matter of right to amend their complaint, the Court's discretion is not in play and ASC's motion must be rejected for that reason alone.

**II.    EVEN IF LEAVE WERE SOMEHOW REQUIRED, THIS IS NOT ONE OF THE
RARE CIRCUMSTANCES WHERE DENIAL OF COMPLAINT AMENDMENT
<u>WOULD BE APPROPRIATE.</u>**

Should the Court give any credence to ASC's argument that these factual circumstances
somehow fall under Rule 15(a)(2) despite the fact that the Original Complaint had not been
served, Plaintiffs respectfully request that, as ASC itself suggests, the Court alternatively
consider Plaintiffs' Amended Complaint and this response as a motion for leave to amend their
complaint.  Under the liberal amendment policy created under Rule 15(a)(2), *see* Fed. R. Civ.
Pro. 15(a)(2) (mandating that "[t]he court should freely give leave when justice so requires"),
the Court should grant Plaintiffs leave to amend their Complaint since it would otherwise
prejudice the existing parties in adding another aggrieved party, Rocky Mountain Wild, that
also seeks relief from an agency decision as to which it alleges substantial, cognizable harm,
particularly where there has been no showing of bad faith or undue delay, and the alleged
prejudice to ASC is based entirely on a factual and legal misunderstanding.

As a threshold matter, even assuming Rule 15(a)(2) governs here, ASC has not
explained why it cannot simply address the substantive arguments in its motion – i.e.,
arguments concerning how the "waiver" and "exhaustion" doctrines in administrative
rulemaking apply here – in its summary judgment briefing.  Particularly considering the
expedited nature of this proceeding that was agreed to specifically to accommodate ASC's
construction schedule, and the fact that Rocky Mountain Wild's addition as a plaintiff
necessitated no alteration to the scope of the Administrative Record or to the summary
judgment briefing schedule, it is impossible to understand what legitimate purpose is served
through ASC's introduction of a makework set of additional non-merits briefs raising
arguments such as waiver and exhaustion that could just as easily be raised in ASC's summary

judgment briefs.  The fact that ASC will have every opportunity in the expedited merits briefing

to raise any argument it wants for why any or all Plaintiffs are not entitled to relief is itself a

compelling reason to reject the motion to strike out of hand – again, even assuming that the

Court has occasion to exercise any discretion vis-à-vis the Amended Complaint.

In any event, in the process of addressing Defendants' myriad unsupported arguments,

Plaintiffs must dispel several misconceptions which form the basis of Defendants' arguments.[3]

1.      ASC asserts that the Amended Complaint "inject[s] a new claim into this

proceeding."  D.E. 22 at 11.  This is simply false.  As Plaintiffs explained to Defendants in their

June 5, 2014 notice, "the amended complaint *will not add any new legal claims or expand the*

*scope of the administrative record; rather, it merely adds an additional organizational plaintiff*

*(Rocky Mountain Wild)*."  D.E. 22-1 (emphasis added).  This is borne out by the red-lined

version of the complaint which compares the Amended Complaint to the Original Complaint by

showing all additions and deletions – which was shared, as a courtesy, with Defendants before

ASC filed its motion to strike – and which clearly demonstrates that both complaints raise the

exact same legal claims challenging two distinct decisions in the form of the July 2012 CRR ski

area exclusion and the September 2013 egress trail decision.  *See* Exhibit A.  Thus, the

Amended Complaint did nothing more than add an aggrieved party to join a lawsuit by other

---

[3]  A court may only "deny a motion to amend if the amended pleading would not survive a
motion to dismiss."  *In re Interbank Funding Corp. Sec. Litig.,* 629 F.3d 213, 218 (D.C. Cir.
2010).  Thus, "[a] court considering such a motion [to strike an amended complaint] presumes
the factual allegations of the complaint to be true *and construes them liberally in the plaintiff's
favor*."  *Oladokun v. Correctional Treatment Facility*, No. 1:13-cv-358, 2013 WL 6147940, at
*3 (D.D.C. Nov. 22, 2013) (Contreras, J.) (emphasis added).

aggrieved parties bringing the same claims, and did not add any legal claims or enlarge the scope of the record in any way.[4]

    **2.**    The apparent premise underlying ASC's assertion of prejudice is that the Plaintiffs in the Original Complaint – TAI, Donald Duerr, and Scott Schlesinger – could not have prevailed, without the addition of RMW, on their CRR ski area exclusion challenge because that challenge would be prevented by the waiver and/or exhaustion doctrines. *See* D.E. 22 at 4-5, 12 (asserting that "Plaintiffs [TAI] and Donald Duerr are clearly barred from making that claim" because this Court ruled in a previous lawsuit that Plaintiffs could not challenge the CRR without a site-specific application affecting their interests). ASC's premise, however, is inconsistent with this Court's prior ruling, and would conflict with binding Circuit precedent concerning the waiver doctrine.[5]

    As this Court explained in another lawsuit in which TAI and Mr. Duerr were challenging a rulemaking petition denial *but brought no challenge to a site-specific application of the CRR harming their interests*: "Plaintiffs are prohibited from challenging the Rule; ***it does not block Plaintiffs from challenging applications or interpretations of the Rule***." *The Ark*

---

[4] ASC admits that the CRR ski area exclusion claim is "alleged in both pleadings," D.E. 22 at 11, but nevertheless asserts that Plaintiffs injected a new claim in its Amended Complaint through a chain of logic that is at odds with D.C. Circuit case law on waiver and exhaustion.

[5] Although Plaintiffs strenuously oppose ASC's position that TAI, Donald Duerr, and Scott Schlesinger could not bring a challenge to the CRR under D.C. Circuit precedent, this Court has explained in similar contexts that there is nothing improper about using the Rule 15(a)(2) process to amend one's complaint in such a way that would strengthen plaintiffs' claims, and indeed that amendment in such scenarios actually furthers the purpose of the rule. *See Paxton,* 2014 WL 2206340, at *2-3 (Boasberg, J.) (explaining that "[b]ecause *amending the Complaint would allow Plaintiff to clarify and strengthen her claims,* and because such amendment is not improperly delayed, unduly prejudicial, or futile, the Court will grant Plaintiff's Motion" to amend). Thus, if, as ASC suggests, Plaintiffs' addition of RMW to the Amended Complaint "clarif[ies] and strengthen[s]" their claims, that is not a basis for denying amendment.

*Initiative v. Tidwell*, No. 1:12-cv-1467 (Boasberg, J.), D.E. 37 at 4 (emphasis added).  Although

ASC emphasizes the first part of the sentence, the second clause – which ASC conspicuously

omits from discussion – is the operative part for purposes of *this* lawsuit.  In this case, unlike

the prior litigation in which the Court explained that Plaintiffs could not challenge the CRR

because they had not identified any "applications or interpretations of the Rule" that adversely

affected their Article III interests because no parcels were at issue in that suit that had been

removed from the roadless inventory pursuant to the CRR (nor was the full CRR administrative

record before the Court in that case), *here* Plaintiffs' interests are undeniably affected by a site-

specific application of the CRR ski area exclusion (i.e., the egress trail decision), which in the

absence of the CRR would have remained designated as a roadless area subject to different

procedural and substantive mandates.[6]

Thus, under longstanding Circuit precedent, and in harmony with this Court's prior

ruling and the rationale underlying it, because Plaintiffs listed in the Original Complaint are

indeed now harmed by an *application* (egress trail decision) of a programmatic regulation

(CRR ski area exclusion), *and* because the issues raised in Plaintiffs' Original Complaint were

raised *by some entity* during the CRR rulemaking process to put the Service on notice of those

concerns, *see* D.E. 20 at 15-18 (listing many public comments during the CRR process

questioning the validity of the ski area exclusion and criticizing the exclusion for departing

from decades-long agency policy and practice), the waiver and exhaustion doctrines are plainly

---

[6]  ASC also ignores that Plaintiffs TAI, Duerr, and Schlesinger have an affirmative NEPA claim
that they were unlawfully excluded from participating in the CRR rulemaking process, in
violation of NEPA's implementing regulations.  *See* D.E. 20 at 44-45.  Since that merits claim
is not at issue in ASC's pending motion, but potentially bears on the waiver/exhaustion
question, this is yet another reason counseling in favor of the Court addressing all of these
interrelated issues at the merits stage.

inapplicable and Plaintiffs in the Original Complaint were entitled to bring their facial

challenge to the CRR ski area exclusion along with their site-specific application challenge.

*See, e.g.*, *Sierra Club v. EPA*, 353 F.3d 976, 982 (D.C. Cir. 2004) (allowing facial regulation

challenge where "Sierra Club did not comment on the proposed emission standards, and none

of the entities that did have challenged the Final Rule" because the agency was notified of those

issues by others in the rulemaking process); *Natural Res. Def. Council v. EPA*, 824 F.2d 1146,

1151 (D.C. Cir. 1987) (holding that "we should not dismiss [NRDC's] petition for review

because the agency in fact considered the statutory issue raised in the petition" because it was

raised by others) (citing many D.C. Circuit cases); *Office of Comm'n of the United Church of

Christ v. FCC*, 465 F.2d 519, 523 (D.C. Cir. 1972) (explaining that under Circuit precedent

courts waive exhaustion if the agency had "the opportunity to consider" "the very argument

pressed" by the petitioner on judicial review); *Commonwealth v. Hayes*, 691 F.2d 57, 60 (1st

Cir. 1982) ("holding that "a party aggrieved by an agency ruling is not estopped from

challenging the validity of an agency standard that it has not objected to at the time of

promulgation"); *cf. Indep. Comty. Bankers of Am. v. Bd. of Govs. of the Fed. Reserve Sys.,* 195

F.3d 28, 33–35 (D.C. Cir. 1999) ("We have frequently said that a party against whom a rule is

applied may, at the time of application, pursue substantive objections to the rule, including

claims that an agency lacked the statutory authority to adopt the rule, even where the petitioner

had notice and opportunity to bring a direct challenge within statutory time limits.") (citing

many cases allowing facial regulation challenges after the expiration of the applicable statute of

limitations when coupled with an as-applied challenge).[7]

---

[7]  The only case ASC cites is *Appalachian Power Co. v. EPA*, 251 F.3d 1026, 1036 (D.C. Cir.
2001), which merely states that it is "black-letter administrative law that absent special
circumstances, a party must initially present its comment to the agency during the rulemaking

**3.** Likewise, ASC's futility argument cannot withstand scrutiny under prevailing case law.  ASC asserts that complaint amendment is futile because RMW "did not exhaust its statutorily mandated administrative remedies prior to attempting to join this suit for judicial review of *the Forest Service's 2013 egress trail decision*."  D.E. 22 at 15 (emphasis added). The glaring legal errors in ASC's argument are twofold.  First, in making its futility argument ASC completely ignores that *irrespective of the 2013 egress trail decision*, this case challenges an entirely separate and distinct agency decision – the July 2012 CRR ski area exclusion – in which RMW extensively participated in the underlying decisionmaking process, raised the issues now presented for judicial review, and is being harmed as a result of the CRR's implementation.  Certainly, therefore, complaint amendment *cannot* be deemed futile as to RMW since there is no jurisdictional or other bar as to at least one claim that was raised in both the Original and Amended Complaint.  Thus, because RMW can obtain relief from the Court to

---

in order for the court to consider the issue."  D.E. 22 at 4 n.4.  However, even in that case, the Court recognized that if *other* commenters had raised the issue during the rulemaking process, anyone – including the plaintiff – could bring suit over that issue, but ultimately declined to review the claim because *no one* had raised it during the rulemaking process.  *Appalachian Power*, 251 F.3d at 1036 ("Petitioners [we]re able to cite no comments that were in the relevant docket that raise the significant contribution issue.").  Thus, under Circuit case law, a facial challenge to a regulation must be based on issues raised during the rulemaking process by someone, *the plaintiff or otherwise*, or else it could be prejudicial for the agency to have its first opportunity to grapple with that issue in court.  Accordingly, in sum, under this unbroken line of precedent in this and other circuits – which is expressly recognized by the *Appalachian Power* court – where *some commenter* has raised a particular issue during the rulemaking process and put the agency on notice of that issue, *anyone* can bring a facial challenge to the rule on those grounds previously raised so long as the party bringing suit satisfies the normal requirements of Article III (including, for example, by demonstrating that they are being harmed in some concrete way by the regulation's application).

redress the harm it is suffering as a result of CRR implementation, complaint amendment is a meaningful and important exercise to protect the interests of RMW and its members.[8]

Second, although it is entirely academic since RMW clearly may obtain relief as to the CRR claim in the Amended Complaint and thus amendment is plainly not futile, even if Plaintiffs had *only* challenged the September 2013 egress trail decision (but not the July 2012 CRR), it still would not have been futile to amend the complaint to add RMW as a Plaintiff. This is because: (1) RMW has alleged in a sworn standing declaration – and ASC has not disputed – that the interests of RMW and its members are harmed by ski-related construction activities in the Burnt Mountain parcel that was designated as roadless prior to the CRR ski area exclusion, *see* D.E. 20-3 ¶¶ 5-9, *and* (2) other co-plaintiffs – TAI, Donald Duerr, and Scott Schlesinger – have, in fact, exhausted their administrative remedies pursuant to 7 U.S.C. § 6912(e) and 36 C.F.R. § 215.9(b), which is also not in dispute.

In such scenarios, the Supreme Court has instructed that where *at least one plaintiff* can establish that the reviewing court has jurisdiction over its claim – i.e., that the party has standing and has exhausted all administrative remedies – the court need not concern itself with whether *other plaintiffs* can independently establish jurisdiction.  *E.g.*, *Rumsfeld v. Forum for Acad. & Inst. Rights*, 547 U.S. 47, 52 n.2 (2006) (explaining that "the presence of one party with standing is sufficient to satisfy Article III's case-or-controversy requirement" and thus a court need "not determine whether the other plaintiffs have standing"); *Bowsher v. Synar,* 478

---

[8]  ASC's admission that RMW could file its own separate case before this Court concerning the validity of the CRR ski area exclusion – i.e., the exact same claim brought by the other plaintiffs in this suit – expressly contradicts the notion that complaint amendment to join in *the same exact legal challenge to the CRR ski area exclusion* would be futile.  D.E. 22 at 13 (admitting that RMW "may separately file a suit for judicial relief" as to the "ski area policy decision made in the [CRR]").

U.S. 714, 721 (1986) (holding that where "one [plaintiff] whom is an appellee here will sustain injury" as a result of the challenged decision, "[t]his is sufficient to confer standing under . . . Article III" and "[w]e therefore need not consider the standing issue as to the" other plaintiffs.[9]

Accordingly, because RMW and its members are harmed by the egress trail decision, and, in any case, because RMW's other co-plaintiffs have fully exhausted their administrative remedies and thereby confer jurisdiction to the Court to review the egress trail decision, complaint amendment is certainly not futile as to the egress trail claim.[10]

---

[9] Most of the cases cited by ASC concerning RMW's failure to exhaust administrative remedies, *see* D.E. 22 at 15-16 & n.13, are completely distinguishable from the current case because they address situations where *none* of the plaintiffs specifically raised the issues in the lawsuit during the administrative appeal process. That is certainly *not* an issue here, as the extensive administrative appeal by Plaintiffs TAI, Donald Duerr, and Scott Schlesinger raised every issue involved in this litigation. *See* BME-4917-5404. In any event, even in the specific context of the statute and regulation governing exhaustion of administrative remedies in connection with Forest Service decisions, courts have held that this exhaustion requirement should not be strictly applied to all plaintiffs so long as the purpose of exhaustion – providing notice to the agency to give the agency an opportunity to resolve the concerns – has been served by *at least one plaintiff*, as occurred here with the filing of the egress trail administrative appeal by TAI, Donald Duerr, and Scott Schlesinger. *See, e.g.*, *Northcoast Envt'l Ctr. v. Glickman, 1996 U.S. Dist. LEXIS 22845 at *10-11, aff'd, 136 F.3d 660 (9th Cir. 1998) (holding that where at least one plaintiff satisfied the exhaustion requirements on all claims, "it would be futile to require the remaining plaintiffs to do so as well")*; *Conservation Congress v. U.S. Forest Serv.*, 555 F. Supp. 2d 1093, 1106-07 (E.D. Cal. 2008) (explaining that "[t]here is no need for a litigant to have personally raised the issue, so long as the issue was raised by another party and the agency had the opportunity to consider the objection" because in such instances "the court is not 'waiving' any exhaustion requirement; rather, the court [is] conclud[ing] that the exhaustion requirement was fully satisfied by virtue of other organizations who voiced their objection"); *Sierra Club v. Bosworth*, 465 F. Supp. 2d 931, 937 (N.D. Cal. 2006) (rejecting argument "that several of the plaintiffs failed to exhaust their administrative remedies on some or all of the claims prior to filing this lawsuit and they should therefore be dismissed from the lawsuit on those grounds" because "Defendants . . . do not dispute that the Sierra Club and Tule River Conservancy exhausted all the requisite administrative remedies, which thereby informed the Forest Service of the claims and arguments at issue here").

[10] Yet another reason why ASC's exhaustion argument must be rejected is that, contrary to ASC's suggestion that RMW's failure to exhaust administrative remedies raises a jurisdictional hurdle, the D.C. Circuit – in line with every other circuit to review the issue – has held that 7 U.S.C. § 6192 is *non-jurisdictional*, *see Munsell v. USDA*, 509 F.3d 572, 578-81 (D.C. Cir.

**4.**    ASC has asserted prejudice from the purported "undue delay" of Plaintiffs filing

an Amended Complaint a mere seven weeks after this lawsuit was filed, and only five weeks

after the joint stipulation was entered by the Court.  D.E. 22 at 10.  Crucially, however, ASC

has conspicuously failed to identify *any concrete prejudice* resulting from Plaintiffs' complaint

amendment, which occurred *before Defendants had to engage in any merits brief preparation

at all* because it preceded Plaintiffs' filing of their motion for summary judgment.  Indeed,

Plaintiffs' Amended Complaint did not alter the scope of the administrative record *at all* –

because the Service had already prepared the full CRR record, clearly indicating its

understanding that the Original Complaint encompassed a facial challenge to the CRR – and

thus complaint amendment in this case did not cause any additional resource expenditure or

other identifiable prejudice to Defendants since it simply added a single party to the case before

Defendants were even called on to *begin* preparing their merits briefs.[11]

---

2007), and has further held that exhaustion under that provision is not mandatory but instead
may be excused "if delaying judicial review would cause irreparable injury, if the agency is not
competent to address the issue or to grant effective relief, or if further pursuit of an
administrative remedy would be futile."  *Ass'n of Flight Attendants-CWA v. Chao*, 493 F.3d
155, 159 (D.C. Cir. 2007).  Here, not only would imminent construction and operation of an
egress trail in a former designated roadless area on Burnt Mountain permanently impair the
interests of RMW and its members and cause them irreparable injury if their challenge were
delayed, *see* D.E. 20-3 ¶¶ 5-9, but it would also be futile to impose an exhaustion requirement
on RMW since the Service has made clear in rejecting the other Plaintiffs' administrative
appeal that it refuses to reconsider the policy choice made in the CRR to remove 8,260 acres
(including 80 acres on Burnt Mountain) from the roadless inventory in conflict with the
Wilderness Act and decades of roadless management policy and practice.  *See* BME-4859
(stating that all "comments, questions and concerns regarding the 2012 Colorado Roadless Rule
with respect to this analysis are beyond the scope of this analysis and the decision space for this
EA").

[11] As this Court has recently explained, prejudice does *not* exist in situations like this one where
Defendants will have an opportunity – in their merits briefs or otherwise – "to respond to
Plaintiffs' updated allegations" made in their amended complaint.  *Paxton,* 2014 WL 2206340,
at *2-3 (Boasberg, J.).  In that situation – even where the case was far advanced and discovery

Moreover, even if ASC's (legally erroneous) position on the merits under the Original Complaint would have been that the original Plaintiffs were estopped from bringing their facial challenge to the CRR on waiver/exhaustion grounds – a position which cannot be sustained under Circuit precedent – ASC surely would not have put all of its eggs in that basket.  Rather, ASC's capable counsel presumably would have argued *in the alternative* that Plaintiffs' substantive merits position concerning the validity of the CRR should be rejected.  Thus, because ASC (and the government) would have necessarily had to expend the *same* amount of time and resources defending this lawsuit on summary judgment and responding to the very same merits arguments – irrespective of the addition of RMW as a plaintiff – there is no legitimate basis for granting ASC's motion on the basis of spurious and unsubstantiated prejudice.[12]

_____

had already close – this Court held that there was no prejudice sufficient to outweigh the liberal amendment policy of Rule 15(a)(2):

> Nor have Defendants identified any real prejudice here.  To be sure, Defendants could be prejudiced if they were not allowed to respond to Plaintiff's updated allegations regarding air in the line, though it is worth noting that they did have the opportunity to discuss those allegations with at least one of their experts.  Plaintiff, however, is not opposed to reopening discovery so that Defendants may pursue whatever further expert reports and depositions they deem necessary.  As trial will not commence until October, and as Defendants will have the opportunity to develop the record regarding Plaintiff's new allegations, the Court sees nothing here approaching undue prejudice.

*Id.*

[12]  The "prejudice" about which ASC complains appears to boil down to the fact that ASC "has a total of 18 days to prepare its cross-motion for summary judgment."  D.E. 22 at 12.  Again, that is a product of ASC's own making, as Plaintiffs would be perfectly content having this case proceed on a more leisurely timeline that normally accompanies APA challenges of this kind, but had little choice in order to accommodate ASC's construction schedule.  In any event, Plaintiffs find it especially difficult to take ASC's prejudice argument seriously where on the one hand ASC is complaining about its limited time to prepare a merits brief, while on the other hand during that same 18-day window ASC somehow found time to draft and file a *17-page*

     **5.**     Finally, as noted above, because ASC recognizes that RMW may bring its own case challenging the CRR ski area exclusion raising the same arguments present in this case, *see* D.E. 22 at 13, and further recognizes that RMW extensively "participated in the [CRR] rulemaking process]," *id.* at 12, there is no basis for denying complaint amendment in this case only to force RMW to file a new complaint mirroring the one in this case that will inevitably be filed as a related case to this one and consolidated on the merits, pursuant to the local rules. Because such a result would serve no one's interests (least of all the Court's) and would undermine judicial economy and efficiency, and further because it would prejudice RMW by requiring it – as a small nonprofit conservation organization – to expend unnecessary resources preparing a makework complaint to litigate the *same claims* that are in the Amended Complaint already on file with the Court, ASC has set forth no coherent or logical reason for why the Court should condone this counterintuitive approach where the Court and the parties will end up in essentially the same posture.

     In sum, under these facts, ASC has wholly failed to demonstrate that the Amended Complaint – which: (1) merely added an aggrieved plaintiff that is not barred from this suit for any reason, (2) did not add any new legal claims or expand the scope of the record, (3) preceded *any* merits brief preparation by Defendants, and (4) Defendants will have a full and fair opportunity to address in their merits briefs – triggered any of the extremely narrow exceptions to the liberal amendment policy fostered by Rule 15(a)(2) (i.e., bad faith, dilatory motive, undue delay, repeated failure to cure deficiencies, undue prejudice, or futility).  Accordingly, ASC's motion is entirely without merit.

---

*motion* seeking to strike Plaintiffs' Amended Complaint rather than merely raising all of its arguments in summary judgment briefing.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny ASC's motion to strike and direct that Plaintiffs' Amended Complaint is lodged as a matter of right pursuant to Rule 15(a)(1), or, alternatively, grant leave for Plaintiffs to lodge their Amended Complaint pursuant to Rule 15(a)(2).

Respectfully submitted,
 /s/ *William S. Eubanks II*
William S. Eubanks II
(D.C. Bar No. 987036)
Eric R. Glitzenstein
(D.C. Bar No. 358287)

Meyer Glitzenstein & Crystal
1601 Connecticut Ave., N.W., Suite 700
Washington, D.C. 20009
(202) 588-5206 / (202) 588-5049 (fax)
beubanks@meyerglitz.com
eglitzenstein@meyerglitz.com

June 26, 2014                                   Counsel for Plaintiffs